My name is Arthur Weed. I'm appointed by the court to represent Lamont Biggs, the appellant. With the court's indulgence, I might briefly address the history of this case. It goes back to 1993 when Mr. Biggs was prosecuted in the Southern District for a methamphetamine crime. He received the prison sentence. I think we know the facts. The area that I'm interested in is the extraterritorial argument. All right. Let me cut right to that. I'd rather have you spend the time on that, because I do really know the history here. Okay. Okay. Now, as to the court's order of January 15th, which addresses that, would you like me to address the first question of that court's order, which is the effect of an extraterritorial conduct rather than conviction? As I read it, could extraterritorial conduct that meets the elements of a crime in the United States but is not necessarily chargeable in the United States form the basis for revocation of supervised release? Now, what I have to say to that is, yes, it could, because I think the guidelines, as I've quoted in my reply brief, specify that the defendant's conduct is what is looked at. Now, with that ‑‑ Well, and I would be inclined to agree with you, but is that a federal, state, or local offense? That's the type ‑‑ that was the grade A, correct, here? That's correct. The Canadian convictions made it a grade A. Right. And so is it a federal, state, or local? Yes, it is. Sure it is. In other words, what he did in Canada would violate 21 U.S. Code 841A, which is manufacturing of methamphetamine here in the United States, but it would do that if he did something in the United States. In other words, we can't prosecute him here because of what he did in Canada. Now, there are exceptions to that. There are statutes that say that conduct committed abroad can be prosecuted in the United States, but 841A is not one of them. Let me make sure I understand what's going on here. There are, as I see it, sort of two different things arising from what he did in Canada. Right. Number one, he got convicted of a Canadian crime, and it seems to me you have a pretty good argument that conviction of a Canadian crime doesn't violate the release conditions that says don't commit another crime because it's not a federal, state, or local crime. Under the small case. Right. Next issue is you're not allowed to use, manufacture, possess, et cetera, drugs. Whether you're convicted or not, you're not allowed to use it. Right. And he did that. And he did that. We admit that. And that violates his other conditions of release. Don't do these things, which you say you admit, and you're right about that. Now, my question is, is that then also a Class A violation because if he did it in the United States, it would be a crime? Only under circumstances that would provide minimum due process to the revocation hearing itself. And this is what I say in my letter brief. In other words, yes, they can say, okay, you did this, this, and this in Canada, and so we're going to revoke your supervised release. But they must do so in a way that provides minimal due process to Biggs or to whoever the defendant is. Right. But if he did that, would that still be a Grade A? Yes, it would. It certainly would because that's what Grade A specifies is that the Canadian or that the conduct constituting the Canadian conviction or possession of methamphetamine, that would make it Grade A. I admit that. So what's your gripe? I'm not sure I get what you're complaining about. Right. What I'm complaining about in this case is that they did not follow what I suggest would be the procedures that would provide minimum due process. In other words, they filed the petition to revoke, which contained five allegations of noncompliance. In other words, they said, okay, here's five things that you did that we're now going to send you back to prison for having done. Now, the first three were the Canadian convictions themselves. And I'm referring to the defendant's excerpts of record, page 41. That's where the first five allegations of noncompliance would appear in the record. Not with the original petition to revoke that was filed in 2001. Now, the second ---- I just want to make sure I'm clear on what relief you're asking us to do. So when I go back there, I'll know what you want us to do. If we agree with you, what we should do is say, Judge Thompson erred in treating the Canadian conviction as a violation. That's correct. So we send it back to have him undo that. Well, you could strike it. Right. Okay. But we'll give you relief. I guess what I'm saying is we give you relief on that. But then as to the other allegation, the allegation that you're not supposed to commit these acts, you would agree that those are Class A violations and he ought to be resentenced by Judge Thompson as to those. No, no, no. No. You say if he had due process, then they're Grade A violations. He did them and all of that. But you're saying he didn't have due process, so they should be vacated. They have to be vacated because we can't go back and suddenly afford due process retroactively. See, I thought you said he admitted he committed that violation. I do admit that. Well, then if he admits it, what due process is he entitled to? Okay. He's entitled to know what it is that the government is going to allege and prove at his revocation hearing in order to send him back to prison. But once he's admitted it, we're beyond that, aren't we? He never admitted it. You just say he admits it. I'm admitting it here. Now, there is a distinction. In other words, the legal issue, as I understand it here, is can his conduct be sufficient to send him back to prison? I'm admitting that the answer to that is yes. That was never admitted, though, at his revocation hearing. In fact, it was contested very vigorously by his trial lawyer. So you want a hearing as to whether he violated the conduct portion of the supervised release conditions? No, not at all. What I'm saying is they have their violation. You want to say he didn't have due process, and because he didn't have due process, you have to get rid of that. It's too late. It's too late. In other words, what I'm saying is this. They filed, they, the government, filed the allegations of noncompliance. They have to do that, of course. Those allegations said, okay, we're alleging three Canadian convictions, having left the jurisdiction and having quit your employment. Right? Okay, what I'm saying here and what my complaint is on this appeal is that that was not enough. That did not provide him with the minimum requirements of due process. I think your notice argument is your weakest, in certain ways, because he was on notice about what happened in Canada is what they were going to be talking about. But you're saying that that didn't put him, you know, I mean, that he didn't know what he was facing, and so he couldn't defend against it, right? That's one of the things I'm saying is that he wasn't given sufficient notice that his conduct would be the basis for the revocation and the enhanced sentence. I'm also saying, and I quote the case of United States v. Javier, if I'm pronouncing that right, in my reply brief, where Javier said, and this is another denial of due process that I would respectfully call to the court's intention, and I quote from the case at page 1093 of 155 Fed Third, thus, when a revocation petition alleges the commission of a new crime and the offense being charged is not evident from the condition of probation being violated, a defendant is entitled to receive notice of the specific statute he is charged with violating. Now, in this case, he received notice of the statute that he violated in Canada. You know, that was alleged in the first three allegations of noncompliance. But nowhere was it alleged that that conduct in Canada would violate 21 U.S.C. 841A if the act had been committed in this jurisdiction. And what I'm suggesting is that there's no way around Javier, because in the very next sentence, they say our decision to highlight the importance of including a specific statute in a revocation petition is not without precedent. In other words, it seems to me that they intended to create a bright-line rule. Now, if they did, that rule was not complied with in this case. In other words, the allegations of noncompliance did not say. So let me just, just to clarify in my own mind, let me hear it from you. Yes. If we agree with you, we throw out the finding of violation based on the Canadian conviction. Right. And then with respect to the Canadian conduct, we would do what? You'd have to say that doesn't matter in this case because they dropped the ball as far as the charging document is concerned. So that should be dismissed as a matter of law because the charging document is insufficient? Yes, sir. Okay. That's exactly what I said. Okay. Thank you, Your Honor. Thank you, Mr. Weed. Good morning. Good morning. Kyle Hoffman for the United States. I'd like to try to organize my remarks based on the court's order from January 15th, divide them in half, roughly. And I think the first issue which we've just been discussing is, is it necessary for there to be essentially that Mr. Biggs have committed a crime that would be chargeable in the United States, a United States crime, for him to get a grade A level sentence? And I submit the answer is no. It doesn't need to be the case that some United States attorney's office could haul him in and charge him for possession of methamphetamine with intent to distribute for there to be a grade A level sentence. All right. But is it a state, federal, or local offense? Well, the conduct is. I mean, I know it's a little bit confusing, but his conduct, if it occurred in the United States, and I think we're all agreed on that, if it occurred in the United States, there's no question that he would be whacked in all kinds of ways, charged in the United States. So the conduct is. Well, you've got the, there's a Fifth Circuit case, I think, Lavario-Quiroz, where on that issue they basically reflect that they, that the court held that the phrase may be a federal, state, or local offense did not imply that foreign offenses could not also warrant an enhancement, but that they said you had to state it in another way, that the way that it was done here, that that would not have satisfied that. Well, I think that's Mr. Weed's argument, and I was going to. Well, but I think the Fifth Circuit also, on that particular point, is. I would disagree with the characterization of how it was charged here, because remember, first of all, the JNC don't use, administer, distribute, purchase, sell drugs. Don't be around any place where that happens. Then when there was amended petition here, those conditions were explicitly mentioned as being part of the charges. Admittedly, in the first petition, that was not the case, but they became allegations six and seven of the second amended petition, and that's an excerpt of record two. Okay, but now you're on the notice, due process argument. Right. Okay. And what I'm saying there is there was definitely notice of what the problem was, what the conduct was that was a problem for the court. Now. Let's suppose we throw out the conviction part of it. Let's say we hold. Go ahead. I'm sorry. Go ahead. It sounded like you were ready to concede something. The conviction, using the Canadian conviction. Actually, well, numbers one and three of the allegations were, you violated the condition, don't commit another federal, state, local offense. And I agree that this does not violate those things, except if we consider the way. Why didn't you admit that a long time ago? It would have saved me a lot of work. I'm sorry. Why didn't you admit that a long time ago? It would have saved me a lot of work. Well, I actually have some more. That's the second part of the court's order. I have a little bit more to say about that. It's not super. Okay. So now we have the conduct. Right. And apparently it's undisputed that the conduct occurred. The only issue is what grade of violation it is. And I think I heard Mr. Weed saying that he doesn't dispute that that conduct would violate American law if it was committed in the United States. I think that's right. So then if that's the case, then it becomes a grade A violation, right? That's correct. Okay. Now, because the district judge incorrectly put the first part that you now concede was improper into the calculus, should we send it back to Judge Thompson and say, hey, go back and refigure this guy's sentence? No. And the reason is this. Because the conditions of the J&C. The J&C is what? I'm sorry. What does J&C stand for? Commitment order. That was the original setting the conditions of his release. The second amended petition, they all relied on the don't hang around drug places and don't yourself administer, distribute, sell, purchase drugs. Those don't require there being a federal offense. They don't require it be chargeable. They don't require there be a conviction. It all focuses on the conduct. And what level of violations are those? That could be a grade A violation. That's my position. And the reason that could be a grade A violation is because we're always looking at the conduct. Well, what did the judge find it to be, though? He did rely on that. Did he find it to be an A or a C, though? He found it to be an A. And here I'll point the court to the parts of the record where this is clear. Page 87 of the supplemental excerpts of record are where the probation officer lays out the chart. And you'll see for that particular condition, don't possess drugs, she says grade A. You'll also see in Judge Thompson's written order, page 140 of the, I believe that's of the supplemental excerpts of record, he says the same evidence that went to establishing that he was convicted in Canada goes to the violation of this condition, don't be around drug places, and don't yourself possess drugs. So what I'm saying is even if you don't use the Canadian conviction as evidence of don't violate another federal, state, or local law, you still violate these other conditions which were apparent throughout. I hope I made that clear. That's the position I'm taking. I think it's not only the position of the government, I think it's what Judge Thompson did. So just to paraphrase it, just to make sure I got it, even if we throw out one grade A, we still have the other grade A that makes all this harmless is what it boils down to. Correct. Now, I don't know if the court is interested in this other issue of would it be chargeable in the United States? Could Mr. Biggs have been basically holding the court somewhere in the U.S. on this as a separate charge? I have a couple of comments about that. At first I thought, and I believe this coming from the court's order, I thought, hmm, I maybe missed the boat or dropped the ball in not seeing that it really was chargeable as a U.S. crime. And in my letter I tried to argue that it was chargeable as a U.S. crime. I'm not 100 percent certain of that. I will concede that. It's arguable. And I gave the facts. The conspiracy that was over at Axior in the United States, the conspirators in the United States. Some of the cases that say that tend to focus more on the threat part of it. And, you know, arguably maybe you would get cases where you say you have a cartel and you've got all sorts of conspiracies and murders, and he seems to be a cook that cooks often. And I agree. And, in fact, I was going to submit to the court there's a couple of recent cases from the 11th Circuit, Florida, precisely what Your Honor has in mind, where they really do focus on whether there was an intent to bring it into the United States. I still think it's arguable here because he's a U.S. citizen. I also think, you know, there were conspirators here in the United States. I went and looked where he was located in Canada. Well, he also made the statement that he went there to cook because of the threats that he had from the first one. Right. But the facts don't seem quite as aggravated as some of the others. It's not crystal clear. And I'm not going to stand in front of the court and say it's crystal clear that he would be chargeable, that he could have been hauled into the United States court for what he did in Canada without further evidence. I think it's this. What should we do about that? Should we have Judge Thompson figure whether, you know, go back and decide whether this is really a Grade A violation or not? No. I don't think so for the reason we talked about earlier. I don't think it requires that Mr. Biggs have been, that he could be hauled into court in the United States and a conviction sustained in the United States for him, for Judge Thompson to look at him and say, your actual conduct is such a breach of my trust and the conditions I set for you, and the evidence is so overwhelming, I am going to give you a Grade A sentence. And it so meets the. . . Now, couldn't he on a Grade C even, or couldn't he on another one still get to the same sentence, but he would have to articulate the reasons and go up? That's the burden of the last ten or so pages of my brief. In a sense, I apologize to the Court for that. It really isn't what Judge Thompson did, but it's what he could have done, very clearly he could have done. And I want the Court to be aware of that, that there were other avenues to get into the same position. And when you think about the sort of, does it offend my sense of justice to have a person who commits this kind of conduct, such a flouting of the Court's orders, that he be capped at a Grade C? Yes, it does. I think the Court should be entitled to go up to a Grade A. And I think everyone has agreed that the conduct was fairly egregious. So no further questions. Thank you. Thank you very much, Mr. Hoffman. Mr. Weed, you've got a little bit of time left. Well, I'll only say one thing, Your Honor, and that is that what I'm trying to stress here is the nature of the defendant's due process rights at a revocation hearing. And what I've said during my main argument is that those were not met by the way in which the matter was brought to a hearing, in other words, the charging documents. They dropped the ball on that. You know, they could have said, okay, we're charging that you did this conduct, that you possessed methamphetamine. They didn't say that in the charging documents. Now, the only thing I would say is that in cases involving a foreign conviction such as this, very often the evidence of what the actual underlying conduct was will be in a foreign language. And that was true in this case, as I mentioned at page two of my letter brief. I think I get your due process argument. Suppose we don't buy it for whatever reason. Okay. Then is that the end of it? If that's the case, then we would strike the other conviction, the other finding based on the Canadian conviction, and we would say Mr. Weed's other argument is the due process argument. We disagree with that end of the case. Is that the way this would play out? I'm not sure I follow. Is there any other reason to send it back then? If we just disagree with the due process argument, you lose and that's the end of it. There's no other basis to remand it. You know, I hate to say yes to that, but I'm afraid that I'm forced to say yes. I think that that's exactly what we're saying here, is that he was not afforded due process. If we agree with you on the due process, we tear it up and strike it, vacate it. If we don't agree with you, the thing stands and that's just the way it is. I'm afraid that's true. Conduct. Conduct, right. Thank you both, gentlemen. Very interesting case, I think. Case to start. You submit and we'll stand and recess for this session. Thank you.
judges: Hall, Silverman, Callahan